# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

OMNI TECHNOLOGIES, LLC                                    PLAINTIFF

v.                                          CIVIL NO. 1:18cv334-HSO-JCG

KNOW INK, LLC                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT KNOW INK, LLC'S MOTION [7] TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND LACK OF PROPER VENUE AND DENYING DEFENDANT KNOW INK, LLC'S ALTERNATIVE MOTION [7] TO TRANSFER VENUE

THIS MATTER IS BEFORE THE COURT on Defendant Know Ink, LLC's Motion [7] to Dismiss for Lack of Personal Jurisdiction and Lack of Proper Venue Or, in the Alternative, Motion to Transfer Venue. After review of the Motion, the record, and relevant legal authority, the Court finds that it lacks personal jurisdiction over Defendant Know Ink, LLC, and the Motion [7] to Dismiss for Lack of Personal Jurisdiction should be granted. The Court further finds that the alternative Motion [7] to Transfer Venue should be denied.

## I. BACKGROUND

A.     Factual background

This matter arises out of a distributorship agreement entered into between Plaintiff Omni Technologies, LLC ("Plaintiff" or "Omni"), and Defendant Know Ink, LLC ("Defendant"). Compl. [1] at 2. Plaintiff is a Mississippi limited liability corporation, *id.* at 1, with its principal place of business in Mississippi, Mem. in

Opp'n [13] at 1.  Defendant is a Missouri limited liability corporation, Compl. [1] at 1, and both of its members reside in Missouri.  *Id.*

The parties' business relationship began on July 21, 2015, when they entered into a contract under which Plaintiff would act as the sole distributor of Defendant's election management software in the States of Mississippi and Alabama ("July 2015 Contract").  *Id.*  Plaintiff and Defendant later renegotiated the July 2015 Contract and entered into two separate agreements on March 31, 2017, one covering Alabama and all of its counties ("Alabama Contract"), Compl. [1] at 3, and one covering the following counties in Mississippi: Jones, Hancock, Oktibbeha, Pearl River, Warren, George, Tippah, Benton, Attala, Tallahatchie, Yazoo, Prentiss, Chickasaw, Leflore, Jasper, Sunflower, Grenada, Bolivar, Noxubee, and Lowndes ("Mississippi Contract"), Mississippi Contract [12-4] at 11.  Plaintiff alleges that it signed the Alabama Contract in its office in Bay St. Louis, Mississippi, Aff. of Rodney Necaise [12-1] at 1, while Defendant contends this Contract was accepted in St. Louis, Missouri, Aff. of Kevin Schott [7-3] at 1.  Under the terms of both contracts, Plaintiff had the sole and non-assignable right to market, promote, and solicit orders on behalf of Defendant in the respective territory covered by each agreement.  Compl. [1] at 3; Mississippi Contract [12-4] at 2.

During the time the contracts were in effect, Defendant shipped marketing materials to Plaintiff's Bay St. Louis office and conducted training sessions of Plaintiff's principals there.  Aff. of Rodney Necaise [12-1] at 2.  Defendant also attended conferences in Mississippi.  *Id.*; Aff. of Kevin Schott [7-3] at 2.

As of September 1, 2017, nine counties in Alabama had purchased Defendant's software.  Compl. [1] at 3.  Plaintiff alleges that Defendant failed to pay Plaintiff commissions due on sales in these nine counties and four other counties in Alabama, in an amount of no less than $197,036.00.  *Id.*  Plaintiff also contends that it was denied the opportunity to provide technical support to these thirteen Alabama counties, which would have generated additional income over a period of three to five years.  *Id.*

In connection with the Alabama Contract, on April 2, 2018, Defendant forwarded to Plaintiff correspondence titled, "Notice to Cure Breach of Contract and Demand Compliance with Distributor Responsibilities," *id.*, which gave Plaintiff thirty days to cure certain alleged breaches identified in the letter, Correspondence April 2, 2018 [12-6] at 1.  Plaintiff disputes whether it breached the Alabama Contract with Defendant.  Compl. [1] at 4.

B.  Procedural history

Plaintiff filed suit in this Court on October 15, 2018, advancing claims for breach of contract, bad faith, conversion, unjust enrichment, and open account.  *Id.* at 4-6.  The bad faith, conversion, unjust enrichment, and open account causes of action are based upon facts alleged in the Complaint that pertain only to the Alabama Contract.  *Id.* at 2-6.  Specifically, these relate to the alleged failure of Defendant to pay Plaintiff commissions on software sales in Alabama.  *Id.* at 4-6.  Mississippi is referenced only in the breach of contract claim, where Plaintiff states merely that "Omni contracted with Know Ink to present and sell Know Ink's

election management software in Mississippi and Alabama in return for commissions." *Id.* at 4. The alleged breach is described as "failing to remit payment as agreed and denying Omni's participation in the sales." *Id.* This allegation incorporates the facts stated earlier in the Complaint, *id.*, which only allege that Defendant failed to pay Plaintiff commissions on Alabama sales and denied Plaintiff participation in sales in Alabama, *id.* at 3. The Complaint is devoid of any allegation that Defendant failed to pay any commissions on Mississippi sales or prevented Plaintiff from participating in sales in Mississippi. *See id.* Based on the Complaint in its entirety, although Mississippi is mentioned in the breach of contract claim, the Complaint does not allege any harm that occurred under, or actual breaches of, the Mississippi Contract.

Defendant filed the present Motion [7] to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3), asserting that the Court lacks personal jurisdiction over it and that venue here is improper. Mot. [7] at 1. The Motion also requests that, as an alternative to dismissal, the Court transfer the case to the Eastern District of Missouri. Mot. [7] at 2. Defendant maintains that it does not have the requisite minimum contacts with the State of Mississippi to satisfy the requirements of Mississippi's long-arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* Defendant further maintains that venue here is improper because this district does not fall into any of the three statutory categories set forth in 28 U.S.C. § 1391. Mem. in Supp. [8] at 13. Defendant relies on the argument that almost no part of the events sued upon

occurred in Mississippi, and those actions that did occur in Mississippi were only tangentially related to the harm actually alleged in the Complaint. *Id.* at 4, 15.

Plaintiff's Response [12] in Opposition contends that personal jurisdiction over Defendant comports with the Mississippi long-arm statute and the Due Process Clause, because Defendant had sufficient minimum contacts with Mississippi, specifically, the Mississippi Contract and shipment of Defendant's products, technical materials, and sales materials to Mississippi. Mem. in Opp'n [13] at 5-6. Plaintiff does not directly respond to the alternative Motion [7] to Transfer Venue but does assert that customers and potential customers of the Mississippi and Alabama Contracts reside in Mississippi and Alabama. Mem. in Opp'n [13] at 13.

In reply, Defendant counters that there is no personal jurisdiction in Mississippi because the Mississippi Contract was not "<u>actually</u> performed in whole or in part in Mississippi." Reply [15] at 3 (emphasis in original). Further, it argues that the Alabama Contract has no factual connection to Mississippi and the Mississippi contacts Plaintiff alleges are insufficient to meet the nexus requirement under the Due Process analysis. *Id.* at 3-6. Defendant submits that the requirements of both the Mississippi long-arm statute, Miss. Code Ann. § 13-3-57, and Due Process are not satisfied, and this Court should not assume jurisdiction over it.

## II. <u>DISCUSSION</u>

### A.    <u>Personal jurisdiction and Rule 12(b)(2)</u>

"Where a court finds it lacks personal jurisdiction, it may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(2)." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). "[T]he party seeking to invoke the power of the court . . . bears the burden of establishing jurisdiction but is required to present only prima facie evidence." *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (quotation omitted). In determining whether a prima facie case exists, this Court must accept as true a plaintiff's uncontroverted allegations and resolve in the plaintiff's favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation. *See id.* at 219-20 (quotation omitted); *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) ("In considering a motion to dismiss for lack of personal jurisdiction, a district court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.") (quotation omitted).

To ascertain whether personal jurisdiction exists over a party, this Court follows a two-step analysis. *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012). First, the Court must examine whether Defendant is amenable to suit under the Mississippi long-arm statute. *Id.* at 496-97. Next, it must evaluate whether the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Id.* at 497. If Mississippi law does not support the

exercise of personal jurisdiction, the Court need not reach the Due Process question.

*Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 621 (5th Cir. 1989).

B.    <u>The Mississippi long-arm statute</u>

"Federal Rule of Civil Procedure 4(k)(1)(A) confers personal jurisdiction over any defendant who would be subject to personal jurisdiction under the long-arm statute of the state in which the district court sits." *ITL Int'l, Inc.*, 669 F.3d at 497.

The Mississippi long-arm statute provides, in relevant part, as follows:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57. Mississippi courts interpret this statute as authorizing

> "three activities" which will permit Mississippi courts to exercise personal jurisdiction over a nonresident defendant: "(1) if that person has entered into a contract to be performed in Mississippi; (2) has committed a tort in Mississippi; or, (3) is conducting business in Mississippi."

*Dunn v. Yager*, 58 So. 3d 1171, 1184 (Miss. 2011) (quoting *Yatham v. Young*, 912 So. 2d 467, 469-70 (Miss. 2005)); *see also* Miss. Code Ann. § 13-3-57. The three prongs of Mississippi's long-arm statute are commonly referred to as "the contract prong, the tort prong, and the doing-business prong." *ITL Int'l, Inc.*, 669 F.3d at 497.

C.    The Fourteenth Amendment Due Process Clause

If a state's long-arm statute "encompasses the defendant's activity for purposes of the suit, the plaintiff must also ensure that the state's exercise of personal jurisdiction over a defendant would be permissible under the Fourteenth Amendment." *Tellus Operating Grp., LLC v. R&D Pipe Co.*, 377 F. Supp. 2d 604, 607 (S.D. Miss. 2005). "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). A nonresident defendant's physical presence within the territorial jurisdiction of a court is not required. *Id.* However, a plaintiff must show that a defendant has "certain minimum contacts with [Mississippi] such that maintenance of the suit does not offend the traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted).

Personal jurisdiction may be general or specific. *ITL Int'l, Inc.*, 669 F.3d at 498. General jurisdiction exists where the defendant has maintained "continuous and systematic" contacts with the forum state, and a court may exercise jurisdiction over any action brought against the defendant in that state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415-16 (1984). "If a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d

266, 274-75 (5th Cir. 2006). Specific jurisdiction is claim-specific. *Id.* at 274. Specific jurisdiction under due process requires:

(1) minimum contacts by the defendant purposefully directed at the forum state;
(2) a nexus between the defendant's contacts and the plaintiff's claims; and
(3) that the exercise of jurisdiction over the defendant be fair and reasonable.

*ITL Int'l, Inc.*, 669 F.3d at 498; *see McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

D.     Plaintiff's prima facia case for personal jurisdiction

Plaintiff argues that the series of contracts it entered into with Defendant should be viewed as an "evolving agreement" in which two contracts, the July 2015 and Mississippi Contracts, were to be performed, by their terms, in whole or in part in Mississippi. Mem. in Opp'n [13] at 5. Plaintiff also maintains that under the Alabama Contract, as well as the others, Defendant was required to submit to Plaintiff's Mississippi office materials and services supporting Plaintiff's marketing and sales efforts. *Id.* at 6; Aff. of Rodney Necaise [12-1] at 2. Defendant contends that the contract at issue in this suit, the Alabama Contract, was to be performed in Alabama and Missouri, not Mississippi. Mem. in Supp. [8] at 7. It disputes that

these shipments and services occurred, Reply Mem. [15] at 3[1], and the parties also disagree on where the Alabama Contract was signed. Plaintiff states it was signed in Bay St. Louis, Mississippi, Aff. of Rodney Necaise [12-1] at 2, while Defendant maintains that its contracts with Plaintiff were accepted by Defendant in Missouri, Aff. of Kevin Schott [7-3] at 2. The Court also notes that the Alabama Contract gives Plaintiff "the limited authority to accept, collect or otherwise take possession of any fees or funds of KNOW iNK and . . . shall hold the same in trust and shall immediately deliver the same to KNOW iNK." Alabama Contract [1-2] at 2.

1.   Personal jurisdiction under the Mississippi long-arm statute

Turning to the question of whether Plaintiff's allegations satisfy Mississippi's long-arm statute, the parties agree that the tort prong does not apply in this case, Reply [15] at 2, thus the Court need not analyze Defendant's contacts under that prong. Because the Court finds that personal jurisdiction exists under the contract prong of Mississippi's long-arm statute, the doing-business prong need not be addressed.

To fall within the ambit of the contract prong of Mississippi's long-arm statute, two prerequisites must be shown: (1) the contract must be made with a resident of Mississippi; and (2) it must be performed either in whole or in part by

---

[1] The Alabama Contract itself is unclear on this point. In describing Defendant's "Marketing and Support" responsibilities it states that Defendant "shall provide technical support services to [Omni], also technical materials and sales to [Omni]." Alabama Contract [1-2] at 3. It also states that Defendant "shall, upon request, assist [Omni] on all advertising, sales promotion, and public relations campaigns to be conducted, including providing [Omni] with documentation of previous promotional campaigns conducted in connection with the Product, and shall provide necessary technical information and assistance." *Id.* The Alabama Contract does not explicitly state whether these services and materials were to be provided to Plaintiff's office in Mississippi or to the location in Alabama where the software was to be sold.

either party in Mississippi. *Cycles, Ltd.*, 889 F.2d at 617. Because there is no factual dispute that Plaintiff is a Mississippi limited liability corporation with its principal place of business in Mississippi, Compl. [1] at 1, the Court focuses on the second factor.

The question of what constitutes performance of a contract in whole or in part in the State of Mississippi was examined in *Med. Assurance Co. of Miss. v. Jackson*, 864 F. Supp. 576, 578 (S.D. Miss. 1994), where this Court cautioned against a "narrow and unfounded view of what performance of a contract entails," *id.* In that case, the Court found that partial performance of the contract occurred in Mississippi where a check was sent from Mississippi, the check was paid by a Mississippi bank, and the release form was returned to a location in Mississippi. The Court reached this conclusion even though settlement proceeds were sent to Alabama and the release was revised and executed in Alabama. *Id.* Also of relevance here is *Cirlot Agency, Inc. v. Sunny Delight Beverage Co.*, No. 2010–CA–01720–COA, 2012 WL 1085867, at *3 (Miss. Ct. App. 2012), where the Mississippi Court of Appeals reasoned that since the plaintiff was located in Mississippi, its performance of the contract logically occurred at least in part within the State.

Plaintiff argues that the Mississippi Contract and July 2015 Contract were to be performed in whole or in part in Mississippi and that this is sufficient under the contract prong to find jurisdiction under Mississippi's long-arm statute. However, the issue is not whether Plaintiff had other contacts that would satisfy the contract prong of Mississippi's long-arm statute, but whether the Alabama contract does.

It is disputed what, if any, activity under the Alabama Contract was intended to take place in Mississippi. But, viewing conflicts in the parties' affidavits and other documentation in Plaintiff's favor, *Pervasive Software*, 688 F.3d at 219-20, Defendant shipped marketing materials, provided technical support, trained personnel, and attended conferences in Mississippi. The Alabama Contract also permitted Plaintiff to take possession of funds for Defendant and hold them in trust, presumably in Mississippi where Plaintiff was based. Finally, Plaintiff signed the contract in Mississippi. The contract prong permits jurisdiction under the long-arm statute for contracts performed "in whole or *in part*" in the State, Miss. Code Ann. § 13-3-57 (emphasis added), and this Court has cautioned against reading these requirements too narrowly, *Med. Assurance Co. of Miss.*, 864 F. Supp. at 578. Because at least some materials related to the Alabama Contract were shipped to Mississippi and Defendant provided services in the State, there is personal jurisdiction over Defendant in Mississippi under the contract prong of the Mississippi long-arm statute.

The Court must next evaluate whether the exercise of personal jurisdiction comports with the Due Process Clause.

2.  Personal jurisdiction under the Due Process Clause

Due process requires "that a defendant have sufficient contacts with the forum state such that it should reasonably anticipate being haled into court there." *ITL Int'l, Inc.*, 669 F.3d at 498 (quotations omitted). Because the parties agree that general jurisdiction does not exist in this case, Reply [15] at 5, the Court will focus on

whether specific jurisdiction exists. This can be satisfied by showing the defendant "purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there." *ITL Int'l, Inc.*, 669 F.3d at 498. The defendant's contacts must be more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.* "Specific jurisdiction may exist where there are only isolated or sporadic contacts, so long as the plaintiff's claim relates to or arises out of those contacts." *Id.* at 499.

In *ITL International, Inc. v. Constenla, S.A.*, the Fifth Circuit found that the defendant had sufficient minimum contacts with Mississippi when it "took possession and title of plaintiffs' goods in Gulfport on 55 occasions" and specified Gulfport, Mississippi as the delivery location. *Id.* These contacts were found to be purposeful so that defendants could reasonably anticipate being haled into court in Mississippi. *Id.* at 499. Importantly, however, the plaintiff's claims did not arise out of the defendant's shipments to Mississippi. *Id.* at 500. Rather, the dispute in the lawsuit was "oriented almost exclusively towards activity that had taken place or may eventually take place in Costa Rica." *Id.* For this reason, there was not specific personal jurisdiction over the defendant under the Due Process Clause. *Id.* at 501.

Plaintiff advances three contacts with Mississippi which it contends support its claim that this Court has personal jurisdiction over Defendant: (1) those contacts related to the July 2015 Contract; (2) those related to the Mississippi Contract; and (3) those related to the Alabama Contract. Plaintiff urges the Court to look at these

three contracts as an "evolving agreement," Mem. in Opp'n [13] at 5, but in order to exercise specific jurisdiction, claim-specific contacts are required. A pattern of behavior that is indirectly related to the claims in the case is not sufficient. *See ITL Int'l, Inc.*, 669 F.3d at 499-500. After describing the July 2015 Contract and the Mississippi Contract, the Complaint raises no further allegations regarding how its actual claims, which all arise out of the Alabama Contract, relate to Mississippi. *Id.* at 2. Plaintiff's claims rest on the alleged failure of Defendant to credit Plaintiff for sales of election management software in Alabama, in contravention of the parties' compensation agreement under the Alabama Contract, Compl. [1] at 3, and Defendant's alleged denial of the opportunity to generate additional income by performing services in Alabama, *id.* at 3-4. The Court will thus only look to contacts with the State of Mississippi in connection with the Alabama Contract in conducting its personal jurisdiction analysis.

The Court accepts Plaintiff's allegations that in connection with the Alabama Contract, Defendant sent materials and services to Mississippi, trained Plaintiff's employees in Mississippi, attended conventions in Mississippi, and signed the Alabama Contract in Mississippi, Aff. of Rodney Necaise [12-1] at 2, and that Plaintiff had the authority to hold funds in trust in Mississippi, Alabama Contract [1-2] at 2. However, none of the allegations in the Complaint refer to the failure of Defendant to comply with contractual obligations related to providing materials or services or the holding of funds by Plaintiff in trust for Defendant. Further, although the Court accepts that the Alabama Contract was signed in Mississippi,

"an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum." *Burger King Corp.*, 471 U.S. at 478. Rather, a court looks to "prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing." *Id.* at 479.

The contemplated future consequences and terms of the Alabama Contract were all directed towards Alabama. Alabama Contract [1-2]. While some tangential activity occurred in Mississippi, this activity is not part of the dispute in this suit. Even assuming the Alabama Contract was signed in Mississippi, that alone is insufficient to exercise specific personal jurisdiction over Defendant where the rest of the Alabama Contract is plainly directed towards activities occurring outside the State, and the actual issues subject to suit occurred outside the State. There is not a sufficient nexus between Defendant's contacts with the State of Mississippi and the dispute over the Alabama Contract to support the exercise of specific jurisdiction.

Because the second prong of the specific personal jurisdiction test is not satisfied, there is no need to determine whether the exercise of jurisdiction over Defendant would be fair and reasonable. There is an insufficient nexus between Defendant's forum contacts and Plaintiff's claims in the present action, and as such Plaintiff has failed to present a *prima facie* case that this Court may properly exercise personal jurisdiction over Defendant.

E.    Alternative Motion [7] to Transfer Venue

1.    Legal standard

In the Fifth Circuit, when a court lacks personal jurisdiction over a defendant it may transfer the case to a district in which personal jurisdiction can be obtained under either 28 U.S.C. §§ 1404(a) or 1406(a).  *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1107 (5th Cir. 1981) (citing *Aguacate Consol. Mines, Inc. v. Deeprock, Inc.*, 566 F.2d 523, 524-25 (5th Cir. 1978)).  Under Section 1406(a), a case may be transferred to any district in which it could have originally been brought.  28 U.S.C. § 1406(a). Under Section 1404(a), a case may be transferred to a district where it might have been brought "or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Here, the parties have not consented to any district so the case may only be transferred to any district where it could originally have been brought. 28 U.S.C. §§ 1404(a), 1406(a).

Under 28 U.S.C. § 1391(b), a civil action may properly be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

It is undisputed that Defendant is a resident of Missouri.  Compl. [1] at 1.

Therefore, any district in Missouri where Defendant resides could be the proper

district.  28 U.S.C. § 1391(b)(1).  Further, the allegations in the Complaint relate to the sales of election software in Alabama.  Compl. [1] at 2-6.  The sales were made in Alabama, the Alabama Contract was to be performed in Alabama, and the additional income that Plaintiff could have earned came from providing technical support to Alabama counties.  *Id.* at 2-3.  The events giving rise to the claim occurred to a substantial degree in Alabama.  Based on this analysis, a district in Alabama or Missouri may be a proper venue for this suit.

In determining the proper venue for a case, the Fifth Circuit utilizes the *Gilbert* factors, which include consideration of public and private interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (adopting the factors from *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), a *forum non conveniens* case).  The private interest factors are:

> (1) the relative ease of access to sources of proof;
> (2) the availability of compulsory process to secure the attendance of witnesses;
> (3) the cost of attendance for willing witnesses; and
> (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)).

The public interest factors are:

> (1) the administrative difficulties flowing from court congestion;
> (2) the local interest in having localized interests decided at home;
> (3) the familiarity of the forum with the law that will govern the case; and
> (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.*

Defendant argues that this case should be transferred to the Eastern District of Missouri. Mem. in Supp. [8] at 16. Plaintiff did not file a substantive response to the Motion [7] to Transfer Venue. *See* Mem. in Opp'n [13]. Plaintiff does note when discussing personal jurisdiction that the witnesses in the case will be customers and potential customers who reside in Mississippi and Alabama. *Id.* at 10.

Defendant's arguments do not make it clear that the Eastern District of Missouri is the proper forum, as opposed to a district in Alabama. On the first private interest factor, Defendant notes that documentation and evidence will be in Missouri, but it concedes that similar evidence will also be located in Alabama. Mem. in Supp. [8] at 16. This factor is neutral. Defendant recognizes that the second private interest factor is not conclusive because there is no perfect venue, *id.*, as no district will have "absolute subpoena power" over all non-party witnesses, *In re Volkswagen of Am., Inc.*, 545 F.3d at 316 (analyzing the second factor by determining which judicial district enjoyed the absolute subpoena power over the non-party witnesses).

In discussing the third factor, Defendant posits that most fact witnesses with direct knowledge of the disputed sales reside in Alabama, although Plaintiff's employee witnesses likely reside in Mississippi and Defendant's employee witnesses likely reside in Missouri. Mem. in Supp. [8] at 16. While Defendant correctly points out that there are travel costs associated with bringing its employee witnesses from Missouri to Alabama, *id.*, there would be even more significant costs incurred by bringing witnesses from the thirteen Alabama counties that purchased Defendant's

software from Alabama to Missouri. This factor weighs in favor of an Alabama venue. Defendant does not advance any arguments regarding the fourth private interest factor, and the Court is not aware of any private interest obstacles with either venue beyond those discussed.

Turning to the first public interest factor, Defendant makes no claim that either the Eastern District of Missouri or a district in Alabama will encounter administrative difficulties flowing from court congestion, and the Court is aware of none. Defendant also does not raise an argument in favor of the Eastern District of Missouri based upon the second public interest factor. The Fifth Circuit has found the following factors to be important in considering localized interest: where the facts arose, where the witnesses are located, and where the evidence is located. *In re Volkswagen of Am., Inc.*, 545 F.3d at 317. As noted above, the Court recognizes that witnesses and evidence may be located in both Alabama and Missouri. The facts giving rise to the claim presumably arose in Alabama, where the sales took place. Because the sales and the Contract were directed towards actions in Alabama, this factor weighs in favor of an Alabama district.

Defendant notes on the third factor that the Eastern District of Missouri will be more familiar with Missouri law and that the contract has a Missouri choice of law provision. Mem. in Supp. [8] at 16. Because of this, the third public interest factor weighs in favor of venue in the Eastern District of Missouri. Finally, Defendant does not call the Court's attention to any conflict of laws problems or

application of foreign law issues, other than those noted in the third factor.  The fourth factor is not helpful in determining proper venue.

Balancing the totality of the private and public interest venue factors, the Court finds that a district in Alabama would appear to be the more appropriate venue.  While the Eastern District of Missouri is more familiar with Missouri law, this one factor is not sufficient to weigh in favor of transferring venue to the Eastern District of Missouri when compared to the expense of having witnesses from thirteen counties in Alabama travel to Missouri for litigation, and the localized interests of Alabama.  Indeed, Defendant agrees that most fact witnesses reside in Alabama.  Mem. in Supp. [8] at 16.  The decision to transfer venue is animated by the underlying principle that a transfer is "for the convenience of parties and *witnesses*, in the interest of justice."  *In re Volkswagen of Am., Inc.*, 545 F.3d at 315 (emphasis added).  A district court in Alabama will be able to apply the relevant Missouri contract law principles more easily than county officials from thirteen Alabama counties will be able to travel to Missouri for litigation.  The Court finds that the appropriate venue for the present dispute is in an Alabama district.

However, the issue of which Alabama district court is appropriate remains. Neither party has presented the Court with any facts or information regarding in which judicial district the software sales took place, or where specific Alabama customers purchased the software.  The Court is unable to determine based on the record before it which district in Alabama would be an appropriate venue.  Because of this difficulty, the Court finds that a transfer to Alabama is not practicable based

on the record. Rather than transferring to the Eastern District of Missouri, which has been found to be an inappropriate venue, the Court ultimately concludes that the interests of justice would best be served by dismissing the case without prejudice and allowing Plaintiff to refile it in the appropriate judicial district in Alabama. The request to transfer venue will be denied.

III. CONCLUSION

To the extent the parties' remaining arguments are not addressed, the Court has considered them and determined that they would not alter the outcome.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Know Ink, LLC's Motion [7] to Dismiss for Lack of Personal Jurisdiction is **GRANTED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Know Ink, LLC's alternative Motion [7] to Transfer is **DENIED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, this case is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction over Defendant Know Ink, LLC.

**SO ORDERED** this the 27th day of September, 2019.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE